Cite as 2021 Ark. App. 179

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CR–20–491

| | |
|---|---|
| CHRISTOPHER W. TERRELL | **Opinion Delivered:** April 21, 2021 |
| APPELLANT | APPEAL FROM THE POINSETT COUNTY CIRCUIT COURT [NO. 56CR-15-21] |
| V. | |
| STATE OF ARKANSAS | |
| APPELLEE | HONORABLE KEITH L. CHRESTMAN, JUDGE |
| | AFFIRMED |

## STEPHANIE POTTER BARRETT, Judge

Christopher Terrell appeals the Poinsett County Circuit Court's order denying his Rule 37 petition for postconviction relief. Ark. R. Crim. P. 37.1 (2017). In his petition, Terrell argued his trial counsel was ineffective for three reasons: (1) failure to move for suppression of physical evidence on the basis of illegal entry into Terrell's residence; (2) failure to timely appeal his motion for new trial due to juror misconduct; and (3) failure to move for suppression of cell-phone site-location information. The circuit court denied Terrell's petition without a hearing. We affirm.

Terrell was convicted of first-degree murder in the November 29, 2014 death of James Hunt and sentenced to twenty-three years in prison. His conviction was affirmed by this court on direct appeal. *Terrell v. State*, 2019 Ark. App. 433, 587 S.W.3d 594.

## I. *Standard of Review*

We do not reverse the denial of postconviction relief unless the circuit court's findings are clearly erroneous. *Slater v. State*, 2017 Ark. App. 499, 533 S.W.3d 84. A finding is clearly erroneous when, although there is evidence to support it, after reviewing the entire evidence, we are left with the definite and firm conviction that a mistake has been committed. *Id.* In making a determination of a claim of ineffective assistance of counsel, this court considers the totality of the evidence. *Id.*

In *Kauffeld v. State*, 2019 Ark. App. 29, at 2–3, 569 S.W.3d 348, 351, this court set forth the framework for analyzing an ineffective-assistance-of-counsel claim:

> The benchmark for judging a claim of ineffective assistance of counsel must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668 (1984). Pursuant to *Strickland*, we assess the effectiveness of counsel under a two-prong standard. First, a petitioner raising a claim of ineffective assistance of counsel must show that his counsel's performance fell below an objective standard of reasonableness. *Mancia v. State*, 2015 Ark. 115, 459 S.W.3d 259. A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Osburn v. State*, 2018 Ark. App. 97, 538 S.W.3d 258. Second, the petitioner must show that counsel's deficient performance so prejudiced petitioner's defense that he was deprived of a fair trial. *Id.* The petitioner must show there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.* Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.* Additionally, conclusory statements that counsel was ineffective cannot be the basis for postconviction relief. *Id.*

II. *Suppression Issues*

On appeal, Terrell addresses his two suppression arguments—failure of his trial counsel to move to suppress physical evidence found at his residence and his cell-phone site-location information—together.

A. Physical Evidence

Terrell's first claim that he received ineffective assistance of counsel concerns counsel's failure to file a motion to suppress physical evidence.[1] The circuit court found two reasons to deny Terrell's Rule 37 petition on this point—(1) Terrell was on parole at the time of Hunt's murder, and as a parolee, he was subject to warrantless searches under Arkansas Code Annotated § 16-93-106,[2] and (2) Terrell could not demonstrate he was prejudiced by the failure to seek suppression of the physical evidence because this court's holding affirming the sufficiency of the evidence to support his conviction did not turn on evidence Terrell believed should have been suppressed.

The facts surrounding Hunt's murder were set forth in detail in Terrell's 2019 direct appeal to this court. Terrell and Hunt both had a sexual relationship with Betty Grant. When Hunt's body, which had sustained a shotgun wound to the head, was discovered by law enforcement beneath his burned truck on a levee in Marked Tree, Terrell and Grant

---

[1]We note that trial counsel filed a motion to suppress physical evidence on March 10, 2017, but this motion was withdrawn by counsel at a pretrial motion hearing.

[2]Terrell argues that this statute was not in effect in 2014 when he was a parolee and his residence was searched. The State concedes that the statute, which was not enacted until 2015, was not in effect at the time in question and therefore has no applicability to this case. However, we will affirm the circuit court's decision if it reached the right result, albeit for the wrong reason. *Colston v. Kelley*, 2019 Ark. 54, 568 S.W.3d 265.

3

became persons of interest after Hunt's wife told law enforcement that they had been with her husband prior to his death, and she had received a call from Terrell on November 27, 2014, asking if she knew where Grant was. Grant initially told the police that she had accidentally killed Hunt, but she later recanted and stated that Terrell had killed Hunt. Grant testified that on November 29, she saw Terrell holding something wrapped in a blue shirt; Terrell told her to get in her car; she and Terrell drove to the levee; Terrell called Hunt to bring gas to them at the levee; Grant fell asleep but awoke to a loud noise and saw Hunt bleeding from his face; and she then watched Terrell drag Hunt to the bottom of the levee, drive Hunt's truck to the bottom of the levee, pour gas on the truck, and set it on fire.

Joseph Wilson testified that Terrell had asked him on November 29 if he could get Terrell a gun, and he told Wilson that he was going to "take care of some business." Wilson later saw Terrell sitting in Grant's car at the levee.

Lloyd Watson[3] testified that he heard a vehicle speed by his house on the night of November 29 and park next door at Terrell's brother's house. The next day, Watson observed Terrell remove items from that vehicle, including a tire, gas cans, and clothes, which Watson recognized as belonging to Grant. Watson also saw Terrell remove the door panels from the vehicle. Terrell placed all the items he removed from the vehicle in a detached garage on his brother's property. After obtaining a search warrant, police seized door panels, a pair of jeans, and gas cans from the detached garage. A pair of boots was also

---

[3]Watson was deemed an unavailable witness, but his prior testimony was read into the record.

4

taken from inside the residence. Although blood was found on the boots and jeans, there was insufficient DNA to determine to whom the blood belonged.

The State argues, and we agree, that even if the above items should have been suppressed, Terrell cannot show prejudice by the failure to file a motion to suppress because there was overwhelming evidence from witness testimony to support his conviction without the seized items. This court, in recognizing that the jury was entitled to believe Grant's testimony that Terrell was the person who killed Hunt and in holding there was sufficient evidence to support Terrell's conviction, stated,

> Although Grant did not see the shot being fired, she heard it and immediately thereafter saw Hunt dying from a gunshot wound to his face. She then saw Terrell drag Hunt's body, position Hunt's truck over the body, and light the truck on fire. Earlier that day, Terrell had asked Joseph Wilson for help acquiring a gun that he needed to "take care of some business." Wilson saw Terrell at the levee the afternoon of the murder. After the murder, Lloyd Watson saw Terrell disposing of items from Grant's car. A jury may properly consider an attempt to cover up one's connection to a crime as proof of a purposeful mental state. *Stearns* [*v. State*, 2017 Ark. App. 472, 529 S.W.3d 654]. Viewing the evidence in the light most favorable to the State, we hold that substantial evidence supports the conviction.

*Terrell*, 2019 Ark. App. 433, at 7, 587 S.W.3d at 600. Grant's eyewitness testimony identified Terrell as the person who murdered Hunt. None of the items Terrell claims were improperly seized provided any evidence linking Terrell to the murder since there was insufficient DNA to determine whose blood was on the boots and jeans. The circuit court was not clearly erroneous in denying Terrell's Rule 37 petition on this point.

### B. Cell-Phone Site-Location Information

Terrell argues in his Rule 37 petition that his counsel was ineffective for failing to move for suppression of his cell-phone site-location information because it was obtained without a warrant. He bases this contention on the United States Supreme Court's decision

5

in *Carpenter v. United States*, 138 S. Ct. 2206 (2018), which held that the government's seizure of cell-site location data is a Fourth Amendment search that requires a warrant. However, as Terrell admits, *Carpenter* was not decided until June 22, 2018, more than two months after he was convicted and sentenced on April 12, 2018. In *Toledo v. United States*, 581 F.3d 678, 681 (2009), the Eighth Circuit Court of Appeals held:

> We do not evaluate counsel's performance using "the clarity of hindsight, but in light of the facts and circumstances at the time of trial." *Carter v. Hopkins*, 92 F.3d 666, 669 (8th Cir. 1996) (citation omitted). Counsel is not accountable for unknown future changes in the law. *See Horne v. Trickey*, 895 F.2d 497, 500 (8th Cir. 1990) (not ineffective assistance of counsel to fail to foresee "a significant change in existing law."); *Parker v. Bowersox*, 188 F.3d 923, 929 (8th Cir. 1999) (not ineffective assistance of counsel to "fail [ ] to anticipate a change in the law").

Failure to move to suppress cell-site location data at the time of trial cannot be ineffective assistance of counsel based on the decision in *Carpenter* because it was not the law at the time of Terrell's conviction. We therefore affirm the circuit court's denial of Terrell's Rule 37 petition on this point.

### III. *Motion for New Trial*

In Terrell's remaining point on appeal, he argues that the circuit court erred in denying his claim for ineffective assistance of counsel because the denial of his motion for a new trial was not preserved for appellate review. To prevail on a claim of ineffective assistance of counsel on the basis of counsel's failure to preserve an issue for appeal, a petitioner must show that had the issue been preserved, the appellate court would have reached a different decision. *Campbell v. State*, 2020 Ark. App. 480, 611 S.W.3d 230. Terrell cannot show that had his motion for new trial been preserved for appeal, it would have been granted; therefore, we affirm on this point.

6

Terrell's sentencing order was filed of record on April 12, 2018. He timely filed a motion for new trial on May 9, 2018, alleging juror misconduct. He filed a notice of appeal from the sentencing order on May 10. The circuit court held a hearing on Terrell's motion for a new trial on July 23 and denied the motion. Terrell then filed an amended notice of appeal on July 26 appealing both the April 12 sentencing order and the July 23 denial of his motion for new trial. This court declined to address Terrell's argument on direct appeal regarding his motion for new trial holding that he had failed to timely appeal that issue because pursuant to Arkansas Rule of Criminal Procedure 33.3(c), the motion was deemed denied on June 8 (the thirtieth day after the date it was filed), the circuit court had no jurisdiction to act on the motion on July 23, and Terrell had failed to timely amend his notice of appeal to include the "deemed denied" motion for new trial. *Terrell*, 2019 Ark. App. 433, at 11–12, 587 S.W.3d at 602.

Terrell argues on appeal he received ineffective assistance because "[t]rial counsel failed to file an amended notice of appeal within 30 days of the deemed denial of Terrell's motion for new trial, thus precluding direct review. This error was prejudicial because Terrell's argument would have been meritorious on direct appeal." In support of this assertion, Terrell states that he "filed an affidavit executed by juror Nicole Elsey stating that 'the jury was unable to determine who specifically shot and killed James Hunt, but that Christopher Terrell was convicted because he was found to have been involved in the commission of the crime.'"

The party alleging juror misconduct "bears the burden of proving both the misconduct and that a reasonable possibility of prejudice resulted from it; we will not

7

presume prejudice in such situations." *Campbell v. State*, 2014 Ark. App. 171, at 8, 432 S.W.3d 673, 678. Elsey's affidavit states, "I Nicole Elsey, served as a juror in the trial of Christopher Terrell from April 10–12, 2018. I hereby state that the jury was unable to determine who specifically shot and killed James Hunt, but that Christopher Terrell was convicted because he was found to have been involved in the commission of the crime."

In denying this point in Terrell's Rule 37 petition, the circuit court found that even if a timely appeal had been made from the denial of the motion for new trial, the motion would have been denied. Rule 606(b) of the Arkansas Rules of Evidence provides,

> **(b) Inquiry Into Validity of Verdict or Indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received, but a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

The circuit court found that nothing in the affidavit triggered a Rule 606 exception because Terrell did not allege improper external influence, and the information contained in the affidavit was not extraneous prejudicial information but rather a mere statement about an inability to reach a particular conclusion.

Terrell argues that he was not charged as an accomplice, and the jury was not instructed as to accomplice liability, but that in light of Elsey's affidavit, it was clear that the jury discussed accomplice liability and even though, according to Elsey, the jury was not able to determine if Terrell or Grant shot Hunt, Terrell was convicted because the jury believed Terrell was involved in the commission of the crime. In *Campbell*, *supra*, this court

affirmed the circuit court's refusal to allow jurors to testify about what an allegedly improperly introduced jury instruction stated and whether the jurors discussed the appellant's intent to commit the crime:

> Rule 606(b) states plainly that a juror may not testify as to the effect of anything upon his mind as influencing him to assent to the verdict. *See Veasey v. State*, 276 Ark. 457, 637 S.W.2d 545 (1982). *Certainly, a juror's understanding of the jury instructions and its effect on her deliberation fall within this very prohibition.* *See also Hall v. Levine*, 104 P.3d 222 (Colo. 2005) (observing that Colorado Rule of Evidence 606(b), which language mirrors that of Ark. R. Evid. 606(b), applied even if the affidavits showed that the jury misunderstood the law or facts, failed to follow instructions, or applied the wrong legal standard); 75B Am. Jur. 2d *Trial* § 1625 (2012) ("The rule applies even on grounds such as mistake, misunderstanding of the law or facts, failure to follow instructions, lack of unanimity, or application of the wrong legal standard."); 66 C.J.S. *New Trial* § 235 (2012) ("[O]rdinarily, a juror's claim that he was confused over the law or evidence and therefore participated in the verdict on an incorrect premise is a matter that inheres in or is intrinsic to the deliberative process and cannot be used to impeach the verdict.").

*Campbell*, 2014 Ark. App. 171, at 7–8, 432 S.W.3d at 678 (quoting *Arnold v. State*, 2012 Ark. 400, at 4–5 (emphasis in the original)). The purpose of Rule 606(b) "is to balance the freedom of jury deliberations with the ability to correct an irregularity in those deliberations." *Miles v. State*, 350 Ark. 243, 251, 85 S.W.3d 907, 912 (2002) (citation omitted). The information Terrell wanted to adduce at the hearing on his motion for new trial was exactly the type of testimony prohibited by Rule 606(b).

Terrell further argues on appeal that the jury deprived him of his due-process right to a fair trial by determining his guilt based on the theory of accomplice liability. This argument was not made to the circuit court. Nevertheless, the supreme court held in *Miles*, *supra*, that Rule 606(b) is not unconstitutional and serves the important functions of maintaining the privacy of jury deliberations and protecting the finality of judgments.

Affirmed.

GLADWIN and HIXSON, JJ., agree.

*Christopher Terrell*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.